UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JOHNNY R. PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:17-CV-301-REW |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| RODNEY BALLARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Inmate Johnny Phillips brings original and "supplemented and amended" *pro se* civil rights

complaints. DE 1 (Complaint), DE 9 (Supplemented and Amended Complaint). The Court screens

this matter pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A. When testing the Complaints' sufficiency,

the Court accepts as true all non-conclusory factual allegations and liberally construes legal claims

in Plaintiff's favor. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437–38 (6th Cir. 2012). The Court

dismisses any claim that is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief from a defendant who is immune from such suits. *Hill v. Lappin*,

630 F. 3d 468, 470-71 (6th Cir. 2010).[1]

---

[1] Ordinarily an amended complaint supersedes rather than supplements the original (and, pursuant to Rule 15(d), complaint supplements are authorized only for post-complaint events). Phillips, however, incorporates his full original complaint into his supplemental and amended complaint. But, Plaintiff, in several instances, asserts factual claims against an individual only named as a Defendant in the supplemental complaint. For example, Phillips includes factual allegations against KSR Warden Aaron Smith and Capt. Mike Williams in his original complaint, DE 1 at 36, but does not name them until his later filing, DE 9 at 7-8. This has consequences for relation back under Rule 15(c)(2).

A defendant must receive timely notice for relation back under Fed. R. Civ. P. 15(c)(1)(C), including actual or constructive notice of the plaintiff's intent to name the defendant. *Cf. Glover v. F.D.I.C.*, 698 F. 3d 139, 146 (3d Cir. 2012) ("[T]he touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation

Phillips's original 43-page complaint sets forth an extensive history of 18 named Defendants' alleged retaliatory acts—between July 2011 and August 2016—and asserts failures to accommodate his limited mobility and his need for a Kosher diet. DE 1 (Complaint at 7-33). Phillips brings claims under 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc–2000cc-5 ("RLUIPA"). DE 1 at 2-3; 36-41. Phillips's 51-page "supplemented and amended" complaint, accompanied by 300+ pages of exhibits, sets forth additional but distinct allegations of discrimination and retaliation from June 2015 through August 2017 and includes an additional 23-Defendant slate. DE 9 (Supplemented and Amended Complaint at 11-47).

Phillips's allegations sweep broadly, but two facts provide the foundation for nearly all of his claims. First, Phillips states that throughout this period he has suffered from serious "orthopedic medical issues" that severely limit his ability to climb stairs or traverse hilly terrain. DE 1 at 10-11, 41. These conditions include, at least, Ankylosing Spondylitis, a form of inflammatory spinal arthritis. DE 9-3 (Exhibits at 77-81). Second, Phillips converted to Judaism shortly after his conviction. His adopted faith includes dietary restrictions. Central to the claims asserted

---

concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.' Thus, only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed.") (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 104 S. Ct. 1723, 1725 n.3 (1984)). The voluminous allegations in the original complaint did not provide the type of notice Rule 15(c)(1)(C) requires to any Defendant not named in the first complaint. The constructive notice concept embodied in Rule 15(c)(1)(C)(ii) does not impute knowledge to every KDOC employee Phillips feels wronged him. The fact that Phillips continues to allege wrongdoing by numerous other officials, *see e.g.,* DE 1 at 8, 10, 11, 22-23, 27-28, not named in either complaint cinches the finding. Accordingly, for Defendants named only in the supplemental filing, Phillips's claims do not relate back. The Court deems such claims filed on August 30, 2017, the date the supplemental tender was signed (DE 9 at 51) pursuant to *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

throughout the filings is Phillips's desire to be housed at a prison facility that (1) has only one level—thus providing access to health care, the law library, and exercise facilities without the need to climb stairs—and (2) serves Kosher meals. DE 1 at 9, 11. Phillips alleges that only the Kentucky State Reformatory ("KSR") in LaGrange, Kentucky satisfies both criteria.[2] *Id*. at 10.

## II

Phillips's factual allegations, construed and described here in his favor, are as follows: Phillips, in 2011, sought transfer to a prison that could accommodate both his medical and religious needs, but was instead transferred to the Little Sandy Correctional Complex ("LSCC"), a prison that does not serve Kosher meals. Once there, prison officials informed him that he would have to wait six months before he could apply for the Kosher Diet Program ("KDP") operated by the Kentucky Department of Corrections ("KDOC"). Phillips changed his religious preference in February 2012, although it is unclear whether he separately and formally applied for the KDP at that time. Phillips immediately became the victim of harassment based upon his faith. When Phillips was unable to obtain Kosher food while he was confined in segregation from May to July 2012, on eleven days over that 2½-month period he chose not to consume non-Kosher food, instead receiving only liquids. During this period LSCC Warden Joseph Meko and LSCC Deputy Warden Paul Holbrook were verbally abusive towards him, referring to him as a "Jew" in a derisive manner. In August 2012, Phillips transferred to the Green River Correctional Complex ("GRCC"), another non-Kosher facility. DE 1 at 7-9.

---

[2] Phillips is currently serving a 30-year sentence for murder imposed in *Commonwealth v. Phillips*, No. 07-CR-266 (Laurel Cir. Ct. 2007). The Kentucky Department of Corrections ("KDOC") has classified him with a "medium" custody level, DE 9-2 at 5, which may limit the range of suitable penal facilities.

Upon his arrival at GRCC, the chaplain ("Mr. Risner") told Phillips that KDOC policy did not require an inmate to wait six months before signing up for the KDP. He was then approved for a transfer to KSR in October 2012. However, GRCC Deputy Warden Ricky Williams changed the approval to send him to the Eastern Kentucky Correctional Complex ("EKCC"), a prison which serves Kosher food but has multiple levels, and hence did not accommodate his mobility limitations. DE 1 at 9-10.

While at EKCC, Phillips asserts that medical staff promptly approved him for a bottom-bunk, first-floor housing limitation, but that an officer instead assigned him to the third floor. Six months later in March 2013, Phillips transferred back to GRCC. Deputy Warden Ricky Williams advised Phillips that he was removed from KDP at EKCC because he had missed several Kosher meals, a fact that Phillips attributed to his third-floor cell assignment. Williams again required Phillips to wait six months before re-applying to KDP because of his prior removal. Phillips applied for KDP in September 2013 and sought a transfer to KSR to accommodate both his dietary and medical restrictions; however, he was transferred to the Luther Luckett Correctional Complex ("LLCC"). DE 1 at 10-11.

Upon his October 2013 arrival at LLCC, Phillips immediately pursued a transfer. However, he was transferred to Northpoint Training Center ("NTC"), another prison without Kosher meals. Deputy Warden Brad Adams advised Phillips to be patient and that NTC was developing the capacity to serve Kosher meals. The program was not in place before Phillips was transferred to LLCC a year later in October 2014. Phillips completed a legal aide training program at LLCC and returned to NTC the following month. Upon his arrival, Adams advised that the development of a Kosher meals program at NTC had been abandoned because the new dining hall, rebuilt after an inmate riot, was too small to accommodate it. DE 1 at 11-13.

In July 2015, Phillips was transferred to KSR. Phillips requested that he promptly begin receiving Kosher meals, but a chaplain advised him that there was a waiting list and to be patient. During this period, several officers at KSR and members of the kitchen staff cautioned Phillips that he faced disciplinary sanctions if he continued to try to obtain Kosher food before he was approved to receive it. These include two Aramark Food Services employees, Matt Jergen and Chad Hart, and KSR Warden Aaron Smith, Deputy Warden James Coyne, Deputy Warden Anna Valentine, Administrative Supervisor Phillip Campbell, Captain Mike Williams, Grievance Coordinators Brian Ward and Theresa Turner. DE 9 at 12. After four months without approval, on December 4, 2015, Phillips filed an inmate grievance regarding this conduct and the delay in receiving Kosher meals. DE 9-5 at 7. Three days later Phillips was transferred to NTC and was told that the reason for the transfer was his failure to participate in KDP.[3] Phillips alleges, however, that Brad Adams advised him that his KDP application was in the Kentucky Online Management System ("KOMS"), a KDOC computer program, before his transfer to KSR, and that he should be returned to that prison. However, on December 10, 2015, he was instead transferred from NTC to LSCC.  DE 1 at 13-15, DE 9 at 12-13.

LSCC Officer Lorie Conlie advised that the prior transfers were apparently based on incorrect or incomplete information and that she would investigate further. Conlie did not follow up with Plaintiff, provide further information, or take action. When Phillips pressed for a response about his prior transfers, Officer Malcome Smith displayed hostility toward him. Phillips filed a grievance regarding perceived retaliation by LSCC officers in January 2016, but officer Brittany

---

[3] Phillips states that he filed a grievance regarding this transfer to NTC, but not until April 5, 2017, sixteen months after the transfer. DE 9 at 35; *see* DE 9-5 at 5-24.

Sturgill rejected that grievance as related to a non-grievable transfer decision.[4] DE 1 at 15-17; DE 9 at 12.

After his transfer to LSCC, Phillips sought correspondence and e-mails between KDOC administrators through Kentucky's Open Records Act. He states that in March 2016 KSR records specialist Jodi Williams responded that she was providing documents in response to his request, but Phillips alleges that he never received them. DE 1 at 17, 28-29; DE 9-3 at 42-47. At the same time, unnamed LSCC officers began harassing Phillips, through several cell searches, strip searches, and property confiscation—including legal documents related to a federal habeas corpus proceeding pending in this District.[5] DE 1 at 18-19.

Alex Ford, the LSCC law library supervisor, refused Phillips permission to conduct legal research using LEXIS (a computer-assisted legal research platform) in February 2016. In March 2016, James Sweat, the KDOC Director of Inmate Population in Frankfort, Kentucky, approved Phillips's transfer request but would only permit a transfer to EKCC (not to KSR). Phillips filed a grievance regarding Sweat's decision, but Sturgill rejected it as a non-grievable classification decision. DE 1 at 19-20; DE 9-3 at 1-2.

---

[4] KDOC policies permit inmates to file grievances regarding a broad range of topics, but formal decisions issued by the Classification Committee regarding the inmate's security classification as well as prison placement and transfers are expressly deemed "non-grievable" under the general inmate grievance procedure. KDOC Corrections Policies and Procedures ("CPP") § 14.6(II)(C)(5) (June 1, 2018). Such decision must instead be appealed using a procedure applicable exclusively to those categories. CPP § 18.1(II)(M) (June 1, 2018). However, other informal custody and classification decisions made on a day-to-day basis are grievable under KDOC's general grievance procedure. *Sublett v. Green*, No. 0: 14-CV-32-HRW, 2014 WL 4782964, at *3-5 (E.D. Ky. Sept. 24, 2014) ("CPP 14.6(II)(C)(5) renders non-grievable formal classification decisions by the Classification Committee, not other conduct by prison officials related to matters of security which the inmate feels should result in a different classification such as protective custody."), *aff'd*, No. 14-6222 (6th Cir. July 14, 2015).

[5] *Phillips v. Akers*, No. 6:13-CV-22-KKC-EBA (E.D. Ky. 2013).

In June 2016, LSCC officer Alex Ford and Deputy Warden Holbrook rejected Phillips's request to conduct legal research for a supplemental *pro se* appellate brief. Ford and Holbrook directed other officers to steal or tamper with his incoming and outgoing legal mail because he was helping another inmate with his legal work. Phillips filed a grievance regarding these matters, but it was denied at the institutional level, and the Commissioner never responded to his appeal. DE 1 at 20, 29-31; DE 9 at 19-21.

Phillips also filed a separate grievance in July 2016 challenging the sufficiency of LSCC's law library. Phillips complained that there was only one computer for research—with a limited LEXIS subscription—and that staff members were not adequately trained in legal matters to determine when inmates should be entitled to free "legal copies" under KDOC policies. Correctional Unit Administrator ("CUA") Sturgill rejected a grievance regarding these matters as non-grievable. In a related grievance, Phillips asserts that Warden Hart made several false statements about library resources in her response denying the grievance, and that the appeal of that rejection was not processed. Phillips broadly contends that whenever an inmate seeks to challenge his conviction or conditions of confinement in a court of law, KDOC transfers them to LSCC or GRCC, both of which have inadequate law libraries. DE 1 at 20-21, 29-31; DE 9 at 19-21; DE 9-3 at 3-7, 56-60.

In August 2016, inmate food trays in the dining hall were covered with ants. Officers and food-service staff refused to do anything about it. Phillips filed a grievance regarding this incident, but Sturgill rejected the grievance as untimely because Phillips had written the wrong date for the event on the grievance form. Phillips re-submitted the grievance, but Sturgill, claiming that it requested inappropriate relief, rejected the submission. Sturgill later told him that Holbrook directed her to reject all of his grievances about this event. DE 1 at 22-24.

On August 8, 2016, LSCC Officer Riggs informed Phillips that, although he was previously approved for a transfer to KSR, LSCC Warden Holbrook, with the assistance of Amanda Scott and Jennifer Tracy at KDOC's central office in Frankfort, amended the transfer so that Phillips would be transferred to GRCC. Phillips claims that the transfer was part of a retaliatory conspiracy, for prior Phillips grievances, involving KDOC officials Paul Holbrook, Brittany Sturgill, Lorie Conley, Beth Harper, David Riggs, Malcome Smith, Alex Ford, Donna Hester Reed, Joseph Meko, Lt. Mabry, Dave Thomas, Sgt. Howard, Tammy Martin, Amanda Scott, and Jennifer Tracy. DE 1 at 24, 31-32; DE 9 at 13-14; DE 9-3 at 24-35, 48-50.

Upon his arrival at GRCC in August 2016, CUA Falicia Howard called nurse Angela Lyle on the phone and discussed Phillips's private medical information while trying to have Phillips's bottom bunk restriction removed from KOMS. Howard then threatened him with unidentified retaliation when he complained. Phillips indicates that nurse Lyle removed his bottom bunk restriction, and officer Howard assigned him to a top bunk. DE 9 at 15, 16.

In September 2016, HSA Ron Carey discussed Phillips's private medical information in a written response to Phillips's grievance about Howard's conduct. Carey also "threatened [Phillips] with retaliation" during a conversation later that same month. DE 9 at 15-16. Officer David Higgs responded to a grievance about this matter, which Phillips asserts was not proper handling of the grievance because it named Higgs. Warden DeEdra Hart denied that grievance in October 2016. DE 9 at 16-17.

After his arrival at GRCC, on August 11, 2016, Chaplain William Kizziar refused to permit Phillips to re-apply for the KDP until he had been at the prison for six months. Phillips filed a

grievance, which he alleges Warden DeEdra Hart directed staff to deny as a nongrievable classification decision.[6] DE 1 at 24-25; DE 9 at 17-18; DE 9-4 at 1-4.

From August 11 to 31, 2016, Darrell Wheeler and another officer denied Phillips access to legal aides and research computers to work on his then-pending federal habeas corpus petition and the civil rights claims he asserts here. Wheeler stated that the existing resources at GRCC were consistent with KDOC policy. Phillips contends that Warden Hart lied in her response to his grievance. DE 9 at 18-19.

On November 18, 2016, Wheeler refused to permit any GRCC staff to notarize two inmates' affidavits that Phillips intended to submit in support of a civil complaint, and confiscated the affidavits and parts of the complaint. Wheeler refused to process the grievance Phillips filed about these events. DE 9 at 24-27.

---

[6] At this point in his original complaint, Phillips segues to a claim that defendants Brad Adams, James Sweat, Donna Hester Reed, Jennifer Tracy, Amanda Scott, Joseph Meko, Paul Holbrook, Alex Ford, David Riggs, Lorie Conley, Malcome Smith, Brittany Sturgill, and Beth Harper together engaged in a broad conspiracy at various times between mid-2012 to early 2016 to deny him Kosher meals, reject his grievances, limit his legal research, deny him copies of policies, destroy records of conflicts he had with staff members, restrict visitation, and file false disciplinary reports against him, all in retaliation for his filing of numerous grievances. DE 1 at 25-28. However, Phillips's conspiracy allegation is wholly conclusory: his meandering factual allegations point solely to the conduct of the individual defendants separately, and there are no facts alleged indicative of a concerted effort by the numerous parties identified to achieve a shared goal. Phillips's allegations are too vague and nonspecific to state a viable conspiracy claim. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012). In addition, the specific conduct to which he points as acts in furtherance of the conspiracy occurred in mid-2012 (¶¶72, 73), late 2015 (¶¶78-81), and January to April 2016 (¶74-77). Any § 1983 conspiracy claim would therefore also be time-barred. *Burnett v. Transit Auth. of Lexington-Fayette Urban Co. Gov't*, 981 F. Supp. 2d 630, 634 (E.D. Ky. 2013). This analysis is also applicable to his claim that Brad Adams, James Sweat, Paul Holbrook, Joseph Meko, Amanda Scott, Jennifer Tracey Brittany Sturgill, Beth Harper, and David Riggs conspired to prevent him from receiving Kosher meals. DE 1 at ¶ 102. [Phillips also identified Donna Reed Hester and Tammy Martin as alleged co-conspirators but does not name them as Defendants in either filing.]

GRCC officer Francis Edwards began to harass Phillips in December 2016, conducting several "shake down" searches each week and telling him that things would go easier for him if he would stop helping other inmates with grievances and legal work. On December 8, 2016, Edwards yelled at him when he offered to help another inmate file a grievance against her. DE 9 at 27-28. Officer Mark Jackson was present at the time, and fired Phillips from his prison job as a janitor. On December 14, 2016, Phillips also filed an inmate grievance against Warden Hart for her alleged failure to take his verbal complaints seriously. DE 9 at 28.

On February 28, 2017, Phillips requested a transfer to KSR based on his belief that the entire staff at GRCC were retaliating against him. While Classification Treatment Officer Grant Penrod approved a transfer, GRCC administrative officials requested that Phillips be transferred to Kentucky State Penitentiary ("KSP"), a maximum-security prison. The transfer to KSP was approved on March 3, 2017. However, Phillips alleges that because of his medical conditions, officials at KSP stopped the relocation before the transfer. DE 9 at 29.

In early 2017, Phillips had several video conference sessions with a female psychologist at another KDOC facility. GRCC Deputy Warden Ron Beck allegedly required officers to monitor the conversations, first by keeping the door to the video conference room open and then by having an officer remain in the conference room, both over the objections of the treating psychologist. Phillips states that Beck refused to process the grievance he filed regarding the matter. DE 9 at 30-31.

On March 27, 2017, Kizziar, Wheeler, and Beck refused to provide Phillips with free "legal copies" of the grievances he had filed because they asserted that he was not facing a deadline to file them. Phillips indicates he was still able to make copies surreptitiously without paying for them. DE 9 at 31.

On March 28, 2017, Phillips placed a complaint raising the claims asserted in this action in the prison's mail drop box. He contends that Wheeler told him that it would never be filed, and that GRCC staff removed and discarded it. The same day Darrell Wheeler communicated to Phillips a threat made by Warden Hart, Ron Beck, Mike Robinson and Darime Ellis to transfer him to EKCC. Phillips was transferred to EKCC, a prison that serves Kosher meals but has multiple levels with stairs, on March 29. On March 31, 2017, Phillips was transferred from EKCC to KSR after he filed a grievance regarding his EKCC placement. DE 9 at 24, 31-33.

Although Phillips's mobility limitations had previously resulted in bottom floor and bottom bunk limitations, he alleges that a captain at KSR countermanded that approach and assigned him to a cell that required him to climb steps. Phillips fell down some stairs on April 2, 2017, because water had drained onto the steps and the stairs had no handrails.[7] Phillips indicates that Dr. Elton Amos, on April 17, 2017, and other unidentified medical staff refused to treat his injuries. Phillips's grievances regarding his fall and the refusal to provide medical care for his injuries were denied as non-grievable or were never responded to. DE 9 at 34.

By April 2017, Phillips signed up for KDP at KSR and was again placed on a waiting list. On April 6, 2017, Aramark Kitchen Supervisor Chad Hart yelled at him in the dining hall when he was checking to see if his name had been added to the Kosher list. Phillips's grievance regarding Hart's conduct was rejected for having too many pages on April 17, 2017. Aramark Supervisor

---

[7] Phillips does not explain the apparent incongruity between his present allegation that he fell down a flight of stairs at KSR, DE 9 at 34, and his prior assertion that KSR is a single-level facility, and hence is the only prison in Kentucky where he can be safely housed while accommodating his mobility limitations and need for a Kosher diet, DE 1 at 9. He does acknowledge that his desire to be assigned to KSR is also motivated by his desire to be closer to family for visitation, to be closer to his personal physician for outside medical treatment, and the availability of rehabilitative programs at KSR that are not available at other prisons. DE 9 at 13.

Jergen and officer Phillip Campbell advised Phillips that fasting, and hence missing Kosher meals provided to him, would violate KDP rules and could result in his removal from the program. DE 9 at 36, 41-42.

On April 29, 2017, as Phillips approached the area where Kosher food is served in the dining hall, Sergeant Steven Crawford directed him to return to the regular chow line. Phillips alleges that Crawford spoke to him in a hostile and aggressive manner, and then elbowed him in the ribs as he was checking the names on a clipboard. Crawford then forced Phillips up against the wall and handcuffed him in an excessively forceful manner. Later that day a KSR lieutenant reviewed surveillance video of the interaction and, after speaking with Crawford, charged Phillips with engaging in a non-violent demonstration and placed him in the segregation unit. Phillips alleges that Crawford directed that he be placed in a cell flooded with urine and fecal matter, and had several broken windows. He contends that temperatures over the next three days were around 45 degrees.[8] Phillips states that he vomited from the conditions, and "gritted" his teeth so hard at night that some of them later had to be removed. He alleges that KDOC had previously "condemned" this wing of the segregation unit, but that it was still used by KSR staff to punish inmates. Phillips was released from segregation on May 4, 2017. DE 9 at 37-40.

When Phillips went to retrieve his personal effects from the property room, he found that a full cup of coffee had been poured on his legal paperwork, much of his personal property was

---

[8] Actual low temperatures in the KSR area during the relevant period were as follows: 4/30/17 - 70˚; 5/1/17 - 52˚; 5/2/17 - 52˚; 5/3/17 - 49˚ (average temperatures during the same period were 77.5˚, 61˚, 63˚, and 57.5˚). *See* NOAA Online Weather Data, Louisville Area, KY, *available at* https://w2.weather.gov/climate/xmacis.php?wfo=lmk (last visited on October 29, 2018). "The Court takes judicial notice of records and information located on government websites because they are self-authenticating under Federal Rule of Evidence 902." *Maxberry v. Univ. of Kentucky Med. Ctr.*, 39 F. Supp. 3d 872, 875 (E.D. Ky. 2014).

missing or had been badly damaged. Several unidentified officers joked about it when he complained. Phillips filed a grievance on May 11, 2017, about Crawford's actions, the conditions in segregation, and his personal property, but asserts that KSR staff destroyed documents regarding these events and denied his grievance as non-grievable. DE 9 at 40-41.

On May 21, 2017, Phillips indicates that he observed maggots on the serving line for Kosher foods. Phillips states that he tried to file a grievance when staff and officers refused his request to take action, but that prison officials refused to process it. Phillips further states that during this period KSR Administrator Campbell and Aramark supervisor Jergen continued to refuse his request to fast without jeopardizing his KDP participation. DE 9 at 42.

Phillips alleges that on June 12, 2017, he went to the KSR legal office to retrieve and view audio and video recordings in preparation for upcoming status and evidentiary hearings in his federal habeas action.[9] However, several compact discs of photographs and audio recordings were missing and have not been found. *See* DE 9-5 at 54–55 (substantiating logs). Phillips states that he attempted to file grievances regarding the missing materials on July 3, 2017, but was refused the necessary forms by a grievance aide. Phillips alleges that this refusal was based upon direction from KDOC Commissioner James Erwin, KDOC Ombudsman John Dunn, KSR Warden Aaron Smith and Deputy Warden Anna Valentine to refuse to provide any inmate with a grievance form as part of a department-wide program to prevent inmates from exhausting administrative remedies. DE 9 at 42-45.

---

[9] Attorney Gregory Ousley was appointed to represent Phillips as standby counsel for the status conference in that action on May 25, 2017; on September 20, 2017, Ousley was appointed as counsel for the approaching evidentiary hearing. That hearing was held on April 30, 2018. *Phillips v. Akers*, No. 6: 13-CV-22-KKC-EBA (DE 89, 99, 128 therein).

On July 21, 2017, Phillips was removed from the KDP for missing Kosher meals, something he states occurred because he was visiting with family and because he could not eat for 24 hours after the dentist installed two fillings in his teeth. Phillips contends that his removal constituted retaliation for filing inmate grievances. DE 9 at 45-46.

Finally, Phillips states that in August 2017 during a telephone conversation attorney Ousley told him that he had made several requests to prison staff to meet with Phillips to prepare for an upcoming hearing, but that he had received no response. Additionally, Ousley had sent Phillips copies of documents filed in his habeas proceedings but Phillips states that he did not receive any of them. Phillips filed a grievance shortly after this conversation, and states that he began receiving mail from Ousley, but that it had already been opened outside of his presence before he received it. DE 9 at 46-47.

### III

The Court has conducted an extensive review of all of Phillips's filings, and concludes that some of the defendants must be served with process to address the claims asserted. However, as explained more fully below, some of the defendants will be dismissed because the pleaded allegations do not state a claim against them or the claims are fatally flawed.

Preliminarily, the Court addresses Phillips's inclusion, in his July 2017 Complaint, of extensive allegations dating back to 2011. RLUIPA claims are generally governed by the four-year limitations period found in 28 U.S.C. § 1658(a). *Al-Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009). Because the RLUIPA limitations period is the longest relevant statutory period,[10]

---

[10] Excepting the IIED claim, which carries a 5-year limitations period and, here, as explained *infra* fails as a matter of law. *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) ("There is a right to be free of emotional distress arising from conduct by another. Because the essence of the tort is the interference with this right and not whether any bodily harm results, the five-year statute of limitations applies.").

the deadline for potentially actionable events is July 2013. The cut-off for Phillips's other claims was (approximately) July 2016, twelve months prior to Phillips's July 2017 original complaint. Claims under Section 1983, the ADA, and the Rehabilitation Act are governed by a one-year statute of limitations. *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 183 (6th Cir. 1990) (Section 1983 claims); *Southerland v. Hardaway Mgmt. Co.*, 41 F.3d 250, 253-54 (6th Cir. 1994) (Rehabilitation Act claims); *Alja-Iz v. Ramsey*, No. 3: 14-CV-618-DJH, 2017 WL 6485803, at *7 (W.D. Ky. Sept. 13, 2017) (ADA claims). Tort claims arising under Kentucky law for negligence and failure to train or supervise also implicate a one-year limitations period. Ky. Rev. Stat. § 413.140(1)(a); *Mulaosmanovic v. Warren County, Kentucky*, No. 1: 17-CV-169-GNS, 2018 WL 1309992, at *2 (W.D. Ky. Mar. 13, 2018). The limitations period is extended, or "tolled," for § 1983 claims to account for the time the inmate must spend diligently exhausting his administrative remedies before filing suit. 42 U.S.C. § 1997e(a); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

Thus, Phillips's claims regarding pre-July 2013 events are time-barred under all theories. *See, e.g.*, DE 1, at ¶¶ 24–36. Further, allegations regarding 2013 through 2016 (including a generous allowance for diligent exhaustion) are only actionable under RLUIPA, which does not authorize claims for money damages. *Haight v. Thompson*, 763 F.3d 554, 568-69 (6th Cir. 2014). Accordingly, for pre-2016 allegations the Court considers only claims for injunctive relief and declines to direct service as to any of Plaintiff's secular theories during this period. *See, e.g.*, DE 1 at ¶ 38 (Campbell-forced stair climbing).

Further, an "official capacity" claim against a state officer is, as a matter of law, a claim directly against the employing state agency. *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While personal-capacity suits seek to

impose personal liability upon a government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent." (internal quotation marks omitted)). Phillips's official capacity claims are therefore civil rights claims against KDOC. However, KDOC is not subject to suit under § 1983, both because a state agency is not a "person" subject to liability under Section 1983, and because the "Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages." *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009); *see Will v. Mich. Dept. of State Police*, 109 S. Ct. 2304, 2312 (1989) ("[N]either a State nor its officials acting in their official capacities are "persons" under § 1983."); *See v. Collins*, 1990 WL 120959, at *2 (6th Cir. 1990) ("[T]his suit seeking only monetary damages against the [Kentucky] Department of Corrections is barred as this defendant is not a 'person' within the meaning of § 1983."). The Court therefore dismisses all § 1983 official capacity claims.

## COUNT I – KOSHER DIET

In Count I, Phillips contends that certain defendants interfered with his ability to maintain a Kosher diet in violation of his First Amendment right to the free exercise of his religion and as protected by RLUIPA,[11] as follows:

---

[11] Phillips asserts the conduct described below also violated his Fourteenth Amendment equal protection rights and constituted cruel and unusual punishment under the Eighth Amendment. DE 1 at 39. However, Phillips's allegations do not support a Fourteenth Amendment claim because he does not allege that he was treated differently than any other persons similarly situated. Nor is reference to the Eighth Amendment apposite. The *First* Amendment is the source for a potential right to Kosher food. The *Eighth* Amendment, as to food, only requires "a proper diet." *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977). Food satisfies this requirement if it "meet[s] nutritional and caloric requirements for humans." *Griffis v. Gundy*, 47 F. App'x 327, 328 (6th Cir. 2002). Here, Phillips's claim arises squarely under the First Amendment, and scattershot references to other constitutional provisions do not broaden the viability of the claim. *Cf. Bell v. Johnson*, 308 F.3d 594, 609-10 (6th Cir. 2002) (prisoner's claim that officials retaliated against him for filing grievances was squarely covered by First Amendment, precluding Fourteenth Amendment due process claim).

A. Beginning on October 22, 2013, NTC Supervisor (now Warden) Adams allegedly lied to Phillips about Kosher implementation at NTC, DE 1 at ¶ 40, and, on November 26, 2014, denied Phillips a KDP application. *Id.* at ¶ 43.

B. From July to December 2015, staff at KSR failed to ensure that he received Kosher meals promptly after he arrived at KSR and threatened him with disciplinary action if he continued to try to obtain Kosher food at the dining hall before he was on the list to receive Kosher meals. Phillips's original complaint alleged that he had spoken with Warden Aaron Smith, and Capt. Mike Williams, about this issue, DE 1 at ¶ 47, 98; his second complaint expanded that list to include Deputy Warden Anna Valentine, Supervisor Phillip Campbell, and Aramark employees Chad Hart and Matt Jergen.[12] DE 9 at ¶ 31; *see also* DE 9-5 at 7-24 (related grievance). Defendant Sturgill denied Phillips's grievance about these issues, allegedly at Defendant Holbrook's behest. DE 9 at ¶ 33.

C. After arriving at LSCC in December 2015, Defendant Conley purportedly gave Phillips the "run-around" regarding KDP participation. DE 1 at ¶ 50. Defendant Malcolm Smith, Conley's supervisor, allegedly became hostile and refused any remedy when Phillips approached him about the issue. *Id.* at ¶ 50-51. Sturgill denied Phillips's grievance on January 7, 2016. *Id.* at ¶ 51.

D. In August 2016, LSCC Deputy Warden Holbrook, Amanda Scott and Jennifer Tracey altered his previously-approved transfer to KSR and instead sent him to GRCC, which does not have a Kosher meals program. DE 1 at 24, 38.[13]

E. In August 2016, GRCC Warden DeEdra Hart and Chaplain Kizziar would not permit him to re-apply for the KDP for six months. DE 1 at 24, 38; DE 9 at 17-18.

F. All of the aforementioned conduct was undertaken pursuant to a policy or custom of KDOC and/or former KDOC Commissioner Rodney Ballard. DE 1 at 38.

---

[12]  In this and other claims, Phillips alleges that several other officers were involved in the denial of his rights, but he did not name them as Defendants in either complaint (*e.g.*, Deputy Warden Coyne, and Coordinators Ward & Turner). *See also* DE 1 at ¶ 37 (Deputy Warden Williams). Though Phillips names Doe Defendants, individuals that Phillips factually identified, but did not name, are obviously not unknown. Accordingly, the Court limits discussion to the claims asserted against named Defendants.

[13] Phillips also alleges that in March 2016, James Sweat and LSCC Deputy Warden Holbrook approved his transfer from LSCC to EKCC—which serves Kosher food but is a multi-level facility—but denied, along with Amanda Scott, a transfer request to KSR, a single-level facility with a Kosher meals program. DE 1 at ¶ 59. He claims Sturgill denied a related grievance. Though Plaintiff originally tied the claim to religious and disability-based discrimination, he rightfully abandoned the religion-based theory in his later filing. DE 9 at ¶ 34 ("[T]he decision was made for the intent of discrimination based upon Plaintiff's medical disabilities[.]"). [Phillips concedes that Defendants approved him for KDP and that EKCC served Kosher meals. *Id.*] Yet, the disability-based claim clearly is time-barred. Thus, the Court perceives a response as unnecessary.

G. In April 2017, Aramark employee Chad Hart yelled at him in the dining hall, and Aramark employee Matt Jergen and KSR Supervisor Phillip Campbell advised him that fasting could result in his removal from the KDP. DE 9 at 36-37.

These alleged events occurred within the four-year RLUIPA limitations period under 28 U.S.C. § 1658(a). Under RLUIPA, a governmental action or rule that imposes a "substantial burden" upon an inmate's exercise of his or her religious beliefs must be justifiable as both undertaken in furtherance of a "compelling government interest" and as the "least restrictive means" of furthering that interest. 42 U.S.C. § 2000cc-1(a)(1)-(2); *Holt v. Hobbs*, 135 S. Ct. 853, 863-65 (2015). While some of the transfers and delays about which Phillips complains may be justifiable or otherwise lawful, the record is not sufficiently developed to permit such a conclusion under the standards applicable at this juncture.

However, whether or not the alleged conduct is potentially RLUIPA violative, the statutory text justifies screening for two additional proposed defendant categories. "[E]very circuit that has addressed" whether "RLUIPA allows individual-capacity suits against state officials . . . has held that it does not." *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) (collecting cases). RLUIPA bars only *government* burdening of religious exercise. *See* 42 U.S.C. § 2000cc-1(a). Because Congress enacted the legislation under its spending power, imposition of individual liability is authorized "only on those parties actually receiving" government funds. *Washington*, 731 F.3d at 145. Individual employees are not "recipients of federal funding" and thus are not subject to RLUIPA liability. *Id.* (citations and quotation marks omitted). The upshot for present purposes is that neither the KDOC employees in their individual capacities nor Aramark employees Matt Jergen and Chad Hart are proper targets for RLUIPA declaratory or injunctive claims.

The Court therefore directs service to address claims for declaratory and injunctive relief under RLUIPA, based on the allegations identified above, on KDOC and the following Defendants in their official capacities: Brad Adams, Aaron Smith, Anna Valentine, Phillip Campbell, Mike Williams, Brittany Sturgill, Paul Holbrook, Lorie Conley, Malcolm Smith, Amanda Scott, Jennifer Tracey, DeEdra Hart, William Kizziar, James Sweat, Beth Harper, David Riggs, and Rodney Ballard.

Phillips also couches his Kosher meal claims as arising directly under the First Amendment. First Amendment claims under § 1983 are distinct from, and should be analyzed separately from, claims asserted under RLUIPA. *See Garraway v. Lappin*, 490 F. App'x 440, 442 (3d Cir. 2012). Courts consider four factors when assessing free-exercise claims in the prison context: (1) whether there is rational connection between the prison regulation at issue and a legitimate government interest; (2) whether the regulation leaves room for the inmate to exercise the right at issue by alternative means; (3) whether accommodating the inmate's exercise of his rights would impose an undue burden on prison resources; and (4) whether there are reasonable alternatives to the prison regulation. *Turner v. Safley*, 107 S. Ct. 2254, 2261–62 (1987).

First, the Court notes that only sub-claims D through G above concern events within the one-year limitations period. *Cf. Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 393-94 (6th Cir. 2015) ("Once the plaintiff knows he has been hurt and who has inflicted the injury, the claim accrues.") (internal quotation marks omitted) (citing *United States v. Kubrick*, 100 S. Ct. 352, 359 (1979)). Grievance-based tolling does not save the tardy allegations. *See* DE 1 at 19-20, 37; DE 9-3 at 1-2. Thus, the Court dismisses them.

The Court finds that the allegations in sub-claims D (regarding the GRCC transfer) and E (regarding the KDP-application delay at GRCC) warrant further development. DE 1 at 24, 38; DE

9 at 17-18. Phillips filed a grievance regarding these events, which appears to have been denied on August 31, 2016, as non-grievable. DE 9-4 at 1-3. These claims appear to be exhausted and timely asserted, and do not self-evidently fail to state a free exercise claim under the First Amendment. The Court will therefore direct service of process upon the relevant individual Defendants (Holbrook, Scott, Tracey, Hart, and Kizziar), with the duty to respond to the relevant Count I allegations.

In sub-claim F, Phillips alleges in broad and conclusory terms that all of the conduct about which he complains was the consequence of written policies or unwritten customs of KDOC and/or Commissioner Rodney Ballard. DE 1 at 38. However, Phillips points only to a KDOC policy that "requires the Department to ensure that inmates have the opportunity to participate in practices of his religious faith in accordance with the Religious Reference Manual." DE 1 at 34 (citing KDOC CPP 23.1). Phillips's only allegations against Ballard, specifically, are that he was "responsible" for KDOC's overall operation, DE 1 at 4, and that he failed to respond to an August 2016 grievance regarding inadequate law libraries. DE 1 at 20; DE 9 at 18. Plainly, Phillips seeks to hold Ballard responsible for the alleged misdeeds of various KDOC officers solely because of his role as Commissioner. However, *respondeat superior* is not an available theory of liability under § 1983, *Polk County v. Dodson*, 102 S. Ct. 445, 453-54 (1981), and supervisory liability does not lie in § 1983 actions unless a plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *see also Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). Further, Ballard's failure to respond to an inmate grievance is not actionable because there is no constitutional right to any grievance mechanism, let alone one that is prompt, consistent, or effective. *Alder v. Corr. Medical Services*, 73 F. App'x. 839, 841 (6th Cir. 2003). Finally, and of

particular relevance here, "denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (internal citations and quotation marks omitted). The Court dismisses the individual capacity claims against Ballard.

Finally, in sub-claim G Phillips complains that in April 2017 Aramark employee Chad Hart yelled at him in the dining hall as he approached the Kosher food line, and that Aramark employee Matt Jergen and KSR Supervisor Phillip Campbell advised him that fasting could result in his removal from the KDP. DE 9 at 36, 41-42. Phillips filed a grievance regarding Hart's conduct, DE 9-5 at 25-32, but he does not indicate that he did so regarding his request to fast. Regardless, Hart's alleged yelling did not violate Plaintiff's constitutional rights. *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Marksberry v. Strode,* No. 1 :10CV-105-M, 2010 WL 3069099, at *1-2 (W.D. Ky August 4, 2010) (holding verbal abuse referring to prisoner's religious head covering as a "clown hat" did not impede inmate's free exercise of religion) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (*per curiam*)). Thus, the Hart-based portion of this sub-claim fails.

As for his request to fast, the Court will direct service on Campbell and Jergen, individually, but notes that Phillips—at least in part—bases his fasting desire on "personal issues with Plaintiff's mother, whom had been diagnosed with cancer, and additional medical and mental health issues." DE 9 at 36. The Free Exercise Clause is implicated where the government compels a person to perform an act that his religion forbids or punishes him for performing an act that his religion requires. *Korte v. Sebelius*, 735 F. 3d 654, 668 (7th Cir. 2013). If Phillips's desire to fast

was not faith-driven, Campbell & Jergen's denials of his request would not impose any burden upon Phillips's religious expression.

## COUNTS II & 6- RETALIATION

In his original complaint, Phillips contends that Defendants retaliated against him for filing grievances by searching his cell, threatening him with disciplinary sanctions, placing him in segregation, revoking good time credits,[14] terminating his job at the KSR canteen, removing him from the honor dorm at KSR, and transferring him to another prison. DE 1 at 39-40. Phillips also includes a blanket claim for retaliation at the end of his amended complaint. DE 9 at 49. Phillips does not specify the acts that were allegedly retaliatory or which defendants committed them. However, the Court perceives fourteen events (several of which he raised in inmate grievances beginning in December 2015) upon which Phillips may rely for his retaliation claims. The Court addresses the challenged episodes below.

### A. Statute of Limitations

The filings include three[15] time-barred claims:

- On December 4, 2015, NTC officer Brad Adams sent an e-mail stating that Phillips filed a lawsuit against the facility and "caused problems" at NTC when he was housed there. DE 1 at 17.
- On December 7, 2015, Phillips was transferred from KSR to NTC after he filed a grievance regarding the delay in receiving Kosher meals based upon a non-defendant officer's incorrect statement that he had not participated in the KDP. DE 1 at 14-15; DE 9 at 12.

---

[14]  The alleged loss of good time credits cannot provide the foundation for a constitutional claim under Section 1983, the success of which would undermine the validity of the underlying disciplinary conviction, unless and until that conviction has been set aside. *Edwards v. Balisok*, 117 S. Ct. 1584 (1997). Phillips does not allege that has occurred here, and the Court therefore declines to consider the credit loss as a material adverse action. *Schreane v. Marr*, 722 F. App'x 160 (3d Cir. 2018).

[15]  Phillips also claims that a number of actions taken from 2012 through mid-2015 were retaliatory. DE 1 at 25-28. Because a retaliation claim based upon these events would plainly be time-barred, the Court does not consider those allegations further.

- In January 2016, LSCC CUA Malcome Smith expressed hostility toward Phillips based upon his filing of a lawsuit against NTC. DE 1 at 16.

Retaliation allegations based on these events, occurring more than one year before Phillips's July 2017 filing, are facially time-barred, *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001). However, as explained previously, the statute is tolled during any period that Plaintiff was diligently pursuing exhaustion.

First, Phillips does not allege exhaustion efforts regarding Adams's e-mails and the Court finds no basis to infer the 6+ month tolling period necessary to render any claim timely. Second, Phillips's April 2017 grievance regarding the December 7, 2015, transfer does not constitute diligent exhaustion pursuit and warrants no tolling.[16] DE 1 at 17, DE 9 at 35. Finally, Phillips's grievance regarding Malcom Smith's conduct was rejected as non-grievable on January 11, 2016. DE 1 at 17. The one-year limitations countdown resumed the day after Phillips exhausted his administrative remedies (January 12, 2016). *Brown*, 209 F.3d at 596; *Burley v. Federal Bureau of Prisons*, No. 6: 15-CV-4-DCR, 2015 WL 3973076, At *2 (E.D. Ky. June 30, 2015). Phillips's July 2017 Complaint came too late; grievance-based tolling does not save the tardy claims, and the Court dismisses them. *Castillo v. Grogan*, 52 F. App'x 750, 751 (6th Cir. 2002) ("When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, sua sponte dismissal of the complaint as frivolous is appropriate.").

### B. Unidentified Wrongdoers

Phillips complains about several events without identifying alleged perpetrators. In March & April 2016, unidentified LSCC officers searched his cell, confiscated documents, and broke a

---

[16] Phillips's filing delay also warrants dismissal on exhaustion grounds (discussed more fully below). Among other things, KDOC policy requires an inmate to file a grievance within five days after the conduct complained of. CPP 14.6 § II (J)(1)(a)(2). Here, Phillips filed his grievance sixteen months, rather than the five days permitted by KDOC's grievance process, after transfer.

pair of headphones. DE 1 at 18. In August 2016, a non-defendant officer at LSCC harassed Phillips. DE 1 at 22. Though Phillips names Doe Defendants, any attempt to amend to add identified officers to the § 1983 claim would almost certainly be time barred.

"Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run[.]" *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). Here, the statute has expired. "Replacing a 'John Doe' defendant with a new, previously unknown party is considered a change of parties and must comply with the requirements of Rule 15(c)(1)(C) when the change is made after the expiration of the applicable statute of limitations." *Brown v. Cuyahoga Cty., Ohio*, 517 F. App'x 431, 433 (6th Cir. 2013). In the Sixth Circuit "an absence of knowledge is not a 'mistake' as used in Rule 15(c)(1)(C)(ii)." *Id.* at 434. The Court declines to direct service on unidentified individuals for likely time-barred claims.

## C. Unexhausted Claims

Federal law requires inmates to exhaust available administrative remedies prior to bringing suit with respect to prison conditions. 42 U.S.C. § 1997e(a). Exhaustion requires a prisoner to fully utilize the prison's inmate grievance system before filing suit to assert a civil claim. *Grinter v. Knight*, 532 F.3d 567, 577-78 (6th Cir. 2008). This requirement is mandatory and claims that have not been exhausted cannot be asserted in any court. *Jones v. Bock*, 127 S. Ct. 910, 918–19 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Further, because "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," the inmate must strictly follow the jail's rules with respect to the timelines, form, and procedures for inmate grievances. *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2004). A court may dismiss a claim upon initial screening where it is apparent from the face of the complaint that the inmate failed to properly exhaust it prior to filing

suit. *Shah v. Quintana*, No. 17-5053, 2017 WL 7000265, at *1 (6th Cir. July 17, 2017); *Barnett v. Laurel Co., Ky.*, No. 16-5658, 2017 WL 3402075, at *1 (6th Cir. Jan. 30, 2017). KDOC's general grievance procedure is set forth in its Corrections Policies and Procedure ("CPP") 14.6 § II (J).[17]

Phillips contends that Warden Holbrook and others interceded to get Phillips transferred to a non-Kosher facility. On August 9, 2016, LSCC Deputy Warden Holbrook allegedly arranged for his transfer from LSCC to GRCC instead of KSR. DE 1 at 24; DE 9 at 13. Phillips promptly filed a grievance regarding the transfer itself. DE 9-4 at 1-4. However, Phillips alleges that officer David Riggs had told him two days before he filed that grievance that Warden Holbrook had "got my transfer amended" to a non-Kosher facility, DE 1 at 24, and it is this essential fact that provides the foundation for his retaliation claim. Phillips's retaliation claim, as to the transfer, was not properly exhausted.

Further, Phillips's grievance complained only of the transfer itself, it did not allege that Holbrook retaliated against him—indeed, the grievance does not mention Holbrook at all. DE 9-4 at 3. Of course, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 127 S. Ct. 910, 922 (2007). KDOC's grievance policy requires an inmate to "include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance so

---

[17] A court may take judicial notice of undisputed information contained on government websites, *Demis v. Sniezek*, 558 F. 3d 508, 513 n.2 (6th Cir. 2009), and may consider such information when determining whether a claim must be dismissed for failure to state a claim, *Lovelace v. Software Spectrum, Inc.*, 78 F. 3d 1015, 1017-18 (5th Cir. 1996). Such records and information are self-authenticating under Fed. R. Evid. 902(5). *Cf. Williams v. Long*, 585 F. Supp. 2d 679, 689 (D. Md. 2008); *Rudisill v. Drew*, No. 4:10-761-CMC-TER, 2010 WL 3222194, at *1 n.2 (D.S.C. July 21, 2010); *In re Katrina Canal Breaches Consol. Lit.*, No. 05-4182, 2008 WL 4185869, at * 2 (E.D. La. Sept. 8, 2008).

that all problems concerning the issue or individuals may be dealt with during step 1." KDOC CPP § 14.6(J)(1)(a)(5). Phillips's failure to identify Holbrook or claim retaliation renders his present claims unexhausted.

Similarly, Phillips failed to exhaust his claim regarding GRCC CUA Falicia Howard and nurse Angela Lyle removing his bottom bunk and bottom floor restrictions. Per Phillips, Defendants were retaliating for grievances Phillips filed against them three years prior. DE 9 at 14-15. However, Phillips's grievance alleged only that Lyle had disclosed personal information about his medical condition to Howard during a phone call, and that Howard threatened to place him in segregation for making threats when he indicated that he would file a grievance about Lyle's disclosure. DE 9-3 at 69-71. The grievance does *not* mention retaliation for grievances filed years before. In addition to the CPP's particularized-information requirement, this Court has held, consistent with *Jones v. Bock*, that an inmate's grievance must provide, at least, a sufficiently clear description of the problem so that prison officials can address it before the inmate asserts a legal claim arising out of those events. *Pruitt v. Holland*, No. 10-CV-111-HRW, 2011 WL 13653, at *4-6 (E.D. Ky. Jan. 4, 2011); *see also Dye v. Kingston*, 130 F. App'x 52, 56 (7th Cir. 2005) (grievance listing items confiscated by prison, including deodorant, tennis shoes, and two Bibles, exhausted claim regarding confiscation but failed to give notice of claim that confiscation interfered with free exercise of religion). Because Phillips's grievance was silent regarding retaliation, these claims were not properly exhausted and the Court dismisses them. *Cf. Johnson v. Johnson*, 385 F.3d 503, 517-18 (5th Cir. 2004); *Valienterbanales v. Robinson*, No. 7: 06cv00327, 2006 WL 1540995, at *1-2 (W.D. Va. May 31, 2006) (holding that prisoner's grievance requesting reinstatement to prior job failed to exhaust claim that he was terminated in the first instance because of his race).

Likewise, Plaintiff failed to exhaust claims regarding his March 29, 2017, transfer from GRCC (a single floor facility without Kosher meal service) to EKCC (a multi-floor facility with Kosher meal service). Phillips alleges that on March 28, 2017, Wheeler told him that Warden DeEdra Hart, Ron Beck, Mike Robinson, and Darime Ellis were "threatening me with retaliation" for attempting to file a civil rights complaint, and the next day he was transferred. DE 9 at 24, 32-33. At EKCC, Phillips promptly filed a grievance that he asserts "address[ed] the retaliatory actions of all those involved." *Id.* at 33. Yet, Phillips's grievance merely states, in broad and conclusory terms, that a dozen named officials "have all acted negligent, grossly negligent, intentionally wanton and malicious, being diliberately [sic] indifferent" to his prior transfer away from KSR in 2015 and the then-current effort by EKCC's chaplain to remove him from KDP. DE 9-4 at 61-65. Phillips grieved a prior (2015) transfer and the Chaplain's present efforts to remove him from KDP, DE 9-4 at 61-65, but did not mention the GRCC to EKCC transfer, much less suggest that the transfer was retaliatory. Because the grievance Phillips relies on did not give notice of the claims he now asserts, they are unexhausted. *Siggers v. Campbell*, 652 F.3d 681, 691-93 (6th Cir. 2011). The Court rejects the unexhausted retaliation claims against Robinson, Ellis, Hart, and Beck.

Moreover, Phillips's grievance never mentioned Hart or Beck. *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) ("[A] plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures[.]").[18] Here, KDOC's inmate grievance policy specifically directs inmates to include

---

[18] A since-invalidated Sixth Circuit rule required an inmate to name each official he wanted to sue in his or her inmate grievance in order to properly exhaust administrative remedies. *Burton v. Jones*, 321 F. 3d 569, 575 (2003). The Supreme Court abrogated that requirement in *Jones v. Bock*, noting that nothing in 42 U.S.C. § 1997e(a) or the state's grievance process required it. 127 S. Ct.

the names of the persons involved in their grievance, KDOC CPP § 14.6(J)(1)(a)(5) (directing inmates to "include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance"). As noted above, the purpose of the exhaustion rule is to give prison officials notice of the problem and those involved so that the officials have the first opportunity to resolve the issue without resort to litigation. Phillips's omission of Hart and Beck's names, particularly while expressly naming a dozen others, deprived them and KDOC of notice of their alleged involvement. Because Phillips failed to name Hart or Beck, the Court rejects Phillips's attempt to freshly raise the unexhausted claims.

### D.    *Deficient Pleading*

In September 2016 GRCC HSA Ronald Carey allegedly forwarded a Phillips grievance, regarding Howard & Lyle's actions (discussed above), to GRCC Deputy Warden Higgs "for retaliation." DE 9 at 15-17; DE 9-3 at 85. To succeed on a retaliation claim, a plaintiff must demonstrate that:

(1) the plaintiff engaged in protected conduct;

(2) the defendant took action against the plaintiff sufficiently adverse to deter a person of ordinary firmness from continuing to engage in that conduct; and

(3) the defendant's adverse action was motivated at least in part by the plaintiff's protected conduct.

*King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012). Phillips does not allege that Warden Higgs actually retaliated against him in any manner, nor does he state or suggest why or how Carey's forwarding of a copy of Phillips's grievance to Higgs constitutes adverse conduct, much less sufficiently adverse to deter him from filing more grievances—something it plainly did not do.

---

at 922–23. However, as noted above, the Supreme Court explained that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

Carey's grievance forwarding is the only act Phillips decries. He alleges nothing else to suggest that Carey was motivated by animus toward prior Phillips grievances. Correlation is not causation. Indeed, courts have stressed that while temporal proximity between the protected conduct and the allegedly retaliatory act may provide indirect evidence of the defendant's retaliatory motive, *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004), it is usually coupled with other intent indicators, such as a history of antagonism between the parties, *Watson v. Rozum*, 834 F. 3d 417, 422 (3d Cir. 2016), something notably absent here. [Indeed, the alleged retaliation threat came before (9/13, DE 9, at ¶ 42), Phillips filed either his September 13 grievance regarding Carey's conduct or his September 16 appeal regarding the same, DE 9-3, at 85.] Phillips simply identifies no motive. Rather, Phillips does little more than attach the word "retaliation" to any action by prison officials with which he disagreed. Such conclusory pleading is insufficient to satisfy even the minimal Rule 8 pleading requirements. *Iqbal*, 129 S. Ct. 1937, 1949 (2009). This remains true even with the additional latitude afforded to *pro se* litigants. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ("More than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements."); *Kamppi v. Ghee*, 208 F.3d 213 (table), 2000 WL 303018, at *1 (6th Cir. May 14, 2000) ("Thus, the less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations."). In sum, Phillips inadequately pleaded the second and third retaliation-claim elements.

Two other Phillips claims fail to clear the Rule 8 hurdle. In December 2016, GRCC Officer Frances Edwards allegedly yelled at Phillips after he offered to help an inmate file a grievance. Like Edwards, Aramark employee Chad Hart allegedly yelled at Phillips in KSR's dining hall on April 6, 2017. DE 9 at ¶ 71–72 (Edwards), ¶ 97 (Hart); DE 9-4 at 46-48. The prohibition against

retaliation for constitutionally protected conduct plays an important role in ensuring that prisoners'

rights, although somewhat qualified to account for the unique circumstances of prison life, retain

vitality during incarceration. *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) ("It is well

established that government actions, which standing alone do not violate the Constitution, may

nonetheless be constitutional torts if motivated in substantial part by a desire to punish an

individual for exercise of a constitutional right."). However, such claims must be analyzed "with

skepticism and particular care, because virtually any adverse action taken against a prisoner by a

prison official—even those otherwise not rising to the level of a constitutional violation—can be

characterized as a constitutionally proscribed retaliatory act." *Davis v. Goord*, 320 F.3d 346, 353

(2d Cir. 2003). Here, Edwards's and Hart's alleged verbal harassment is insufficiently adverse to

support a retaliation claim. *Cf. Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012); *Carney v.

Craven*, 40 F. App'x 48, 50 (6th Cir. 2002) ("Even if the grievance was not frivolous, he did not

state a claim for retaliation in the form of verbal harassment. An inmate has no right to be free

from verbal abuse, and minor threats do not rise to the level of a constitutional violation.")

(citations omitted). Thus, the Court dismisses the verbal harassment claims.

E. *Remaining Claims*

GRCC CUA Darrell Wheeler allegedly refused to permit staff to notarize several affidavits

for Phillips and confiscated portions of another inmate's civil complaint when he complained on

November 18, 2016. DE 9 at 24-27.[19] Phillips promptly filed a grievance, DE 9-4 at 35-36, which

he alleges was not processed by staff, DE 9 at 27. Plaintiff also alleges that Wheeler, in March

2017, refused to permit Phillips to make "legal copies" *gratis* and subsequently confiscated or

---

[19] Phillips indicates that some, or perhaps all, of this legal work, including the affidavits and the
complaint, belonged not to himself but to another inmate, Kurt Lowe. DE 9 at 27.

destroyed a § 1983 complaint that Phillips was attempting to mail. DE 9 at 24, 31-32. While Phillips plainly intended these events to serve as part of the factual basis for his claims regarding access to the courts, it is less clear whether he intended that they underpin his retaliation claim as well. Out of an abundance of caution, the Court will order service on Wheeler, individually, for further development of the retaliation claim.

Plaintiff further alleges that Officer Edwards harassed him with shakedown searches and that Officer Mark Jackson removed him from his job as a janitor in early December 2016 because Phillips helped another inmate file a grievance. DE 9 at ¶ 72. The Court will allow Phillips to go forward with these claims. The Court cannot categorically find that multiple weekly searches or removal from a prison job are insufficiently adverse for purposes of a retaliation claim. *Milligan v. Archuleta*, 659 F.3d 1294, 1296 (10th Cir. 2011); *Dewalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000).

Finally, KSR Sergeant Steven Crawford, in April 2017, allegedly yelled at Phillips, knocked him down, filed disciplinary charges, and placed him in a segregation cell in appalling conditions for several days. DE 9 at 37-40. Phillips filed a grievance regarding these events, which was rejected because it requested "indefinite action." DE 9-5 at 35-50. The Court will direct service on Crawford, individually.

## COUNT III – CRUEL AND UNUSUAL PUNISHMENT

Count III contends that unidentified defendants cruelly and unusually punished Phillips by threatening to transfer him to LSCC, where he was allegedly "starved" in 2012,[20] and to EKCC

---

[20] Phillips's characterization of the 2012 events as LSCC staff "starving" him is dubious. The Complaint allegations and exhibits indicate that he was engaging in a voluntary and intermittent hunger strike. As with the truism "you can't have your cake and eat it too," Phillips cannot refuse food and call it torture. In any event, any claim based on the events is time-barred.

or KSP, respectively medium- and high-security facilities, where he alleges dangerous gang members are hostile and threatening to Jewish inmates. DE 1 at 40-41. Phillips fails to indicate the threats he is referencing or who made them. Regardless, as indicated above, threats and other forms of verbal harassment are insufficient to state a claim of constitutional dimension. *Johnson*, 357 F.3d at 546 (holding "harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Johnson v. Moore*, 7 F. App'x 382, 384 (6th Cir. 2001) ("Allegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment."); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (noting that mere threats and gestures do not amount to constitutional violations, even if true). The Court dismisses Count III as inadequately pleaded.

The Court will, however, direct service on Defendant Crawford, individually, to respond to the allegations discussed in the prior retaliation section also under the Eighth Amendment rubric.

## COUNTS IV & 5 – ACCESS TO THE COURTS

Phillips alleges that Defendants abridged his right of access to the courts for the redress of grievances through mishandling or confiscation of his legal mail and materials. DE 1 at 41; DE 9 at 49.[21] A canvas of the two pleadings suggests that Phillips's claim arises from three types of conduct; the Court discusses each in turn.

First, Phillips complains that many of his grievances were improperly rejected or should not have been denied as non-grievable. For instance, Phillips complains that CUA Brittany Sturgill

---

[21] Phillips refers to the First, Fifth, Sixth, and Fourteenth Amendments as the basis for this claim. At various times, the Supreme Court has grounded the right of "access to the courts" in the Privileges and Immunities Clause of Article IV, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment. *See Christopher v. Harbury*, 122 S. Ct. 2179, 2186 n.12 (2002). But it remains a single, unitary right.

improperly denied or rejected numerous grievances he filed on spurious grounds between January and August 2016. DE 1 at 17, 20, 21, 23. He also asserts that, in August 2016, GRCC Warden DeEdra Hart directed staff to deny a grievable grievance as non-grievable, DE 1 at 24-25, and that HSA Ronald Carey and Deputy Warden David Higgs did not properly process a grievance. DE 9 at 15-17. Finally, Phillips broadly asserts that KDOC Commissioner James Erwin, KDOC Ombudsman John Dunn, KSR Warden Aaron Smith and KSR Deputy Warden Anna Valentine have issued a directive to "not allow" inmates to file inmate grievances under CPP 14.6. DE 9 at 43-44.

These acts cannot undergird an access claim because inmates do not have a constitutional right to a prison grievance procedure. *Jones v. North Carolina Prisoners Labor Union*, 97 S. Ct. 2532, 2544 (1977) (Burger, J., concurring). Thus, a prison official's alleged failure to comply with grievance procedures states no actionable constitutional claim. *Alexander v. Vittitow*, 2017 WL 7050641, at *2-3 (6th Cir. Nov. 9, 2017); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Flowers v. Tate*, 925 F.2d 1463 (6th Cir. 1991). A formal response by prison officials that an issue is non-grievable may render the grievance process "unavailable" with respect to that issue, or a final rejection of a grievance may render administrative remedies exhausted with respect to its allegations, but such responses by prison officials are not independently actionable. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008).[22]

---

[22] The Court recognizes the potential inconsistency between the access-claim rejection here and the exhaustion findings above. *Alexander*, 2017 WL 7050641, at *3 ("If a prisoner is improperly denied access to the grievance process, the process is rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action."). Accordingly, the Court has limited exhaustion-based dismissals to those claims for which Phillips identified a purportedly exhausting grievance. In such circumstances, the grievance process clearly was "available" to Phillips (in some form) and lack of access cannot excuse Phillips's improper exhaustion efforts.

Second, throughout his pleadings Phillips complains that Defendants did not provide adequate legal resources to inmates. Phillips alleges that: the law library at LSCC and/or GRCC had too few computers with access to the LEXIS legal research database; the LEXIS subscription failed to provide access to a sufficient number of databases; additional computer access hours were needed to meet the needs of the inmate population; sufficient legal aides or law books were not made available; outgoing mail could only be dropped off during a two-hour window and no records were kept to track it; incoming mail was delayed before receipt; and on several occasions staff refused to notarize affidavits intended to be submitted with court documents or to provide him with photocopies without charge. DE 1 at 19-21, 29-31; DE 9 at 18-21, 24-27; DE 9-2 at 68-80; DE 9-3 at 5-8.

The First Amendment affords any incarcerated person the right to meaningful access to the courts. *Lewis v. Casey*, 116 S. Ct. 2174, 2182 (1996). However, the nature of that right is focused on its ends not upon its means. It is not enough for a plaintiff to complain in the abstract of alleged law library or legal aide deficiencies. Rather, the inmate must link such inadequacies to an actual injury regarding a particular non-frivolous legal claim. *Hadix v. Johnson*, 182 F. 3d 400, 404-06 (6th Cir. 1999); *Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011).

Phillips bemoans the legal resources available to himself and other inmates, but he fails to credibly link any resource deficiencies to prejudice regarding a particular claim.[23] Further, Phillips's acknowledgment that he was represented by counsel (the Department of Public

---

[23] For instance, Plaintiff attributes his inability to "supplement the pleadings" prior to the Kentucky Court of Appeals denying his CR 60.02 appeal—"to include several valid issue[s] omitted by DPA counsel"—to alleged legal resource inaccessibility in June 2016. DE 9 at ¶ 53; *see also* DE 1 at 20 (claiming a related grievance was filed); DE 9-2 at 70–79 (referenced grievance citing June 2016 issues). Yet, the state court rendered its decision before June 2016. *Phillips v. Commonwealth*, No. 2014-CA-000650-MR, 2016 WL 2894026, at *1 (Ky. Ct. App. May 13, 2016).

Advocacy, in the state courts, and Mr. Ousley federally) also dooms his access claim. *Holt v. Pitts*, 702 F. 2d 639, 640 (6th Cir. 1983) ("[I]t is clear that counsel was appointed to represent him in both federal and state actions pending against him. As a matter of law, therefore, the state fulfilled its constitutional obligation to provide him with full access to the courts."); *Lewis v. Clark*, 577 F. App'x 786, 797 (10th Cir. 2014) ("[A]lthough the Sixth Amendment provides a right to counsel or a right to proceed pro se, it does not provide a right to assist appointed counsel with legal research."). In short, Phillips failed to state a viable access-to-courts claim based on alleged inadequacy of prison resources. *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) (adequate pleading of access-to-courts claim requires allegation of actual injury to specific claim, allegation of the facts and the law in the underlying claim, and demonstration that underlying claim was non-frivolous) (citing *Christopher v. Harbury*, 122 S. Ct. 2179, 2187 (2002)); *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011).

Third, Phillips asserts that on several occasions officers opened his incoming legal mail outside of his presence and interfered with his outgoing legal materials or legal mail by confiscating or destroying it. Phillips alleges that: (I) LSCC Supervisor Alex Ford allowed his unidentified legal mail to be "tampered with" in mid-2016, DE 1 at 20; (II) Darrell Wheeler confiscated several unidentified affidavits and a portion of a civil complaint in November 2016, DE 9 at 25, 27; (III) Wheeler or others prevented a civil rights complaint that he wished to file in this Court from being mailed in late March 2017, DE 9 at 30-32; (IV) in June 2017, several compact discs containing legal materials relevant to his federal habeas petition and stored for Phillips in the KSR legal office went missing, DE 9 at 42-43; and (V) in August 2017, several envelopes sent by his federal habeas counsel were either not received, were delayed before delivery, or were opened outside of his presence before delivery. DE 9 at 46-47.

While Phillips's wide-ranging allegations discuss the Defendants' alleged misconduct at length, he again fails to credibly tie the alleged misconduct to any prejudice regarding an otherwise viable legal theory. The failure to plead these necessary allegations in his complaint with sufficient particularity requires dismissal of this aspect of his access-to-courts claim. *Brown*, 415 F. App'x at 612 ("Essentially, a claim for denial of access to the courts has unique pleading requirements: a plaintiff must plead a case within a case, alleging the law and facts sufficient to establish both the interference with his access to the courts, and the non-frivolous nature of the claim that was lost."); *Christopher*, 122 S. Ct. at 2187 ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant . . . well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."). The Court will deny Phillips's access-to-courts claim without prejudice. *See Brown*, 415 F. App'x at 614-15.

## COUNT V – NEGLIGENT FAILURE TO TRAIN AND SUPERVISE

In his fifth count, Phillips alleges that Defendants "were negligent, and grossly negligent [by] failing to train and supervise" their officers resulting in a violation of his civil rights. DE 1 at 41. Phillips does not identify which Defendants were allegedly negligent.

As a threshold matter, an assertion that supervisory government officials failed to adequately train or supervise their subordinates typically arises not as a freestanding claim but as one of several ways for a plaintiff to show that a policy or custom of a city or county caused the plaintiff's injury, so that municipal liability may attach. *See Shadrick v. Hopkins Co., Ky.*, 805 F. 3d 724, 737 (6th Cir. 2015); *Burgess v. Fischer*, 735 F. 3d 462, 478 (6th Cir. 2013); *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). In this case, the defendant officials are employed by KDOC, a state agency, not by a city or county municipality, and hence the policy-or-custom

requirement of *Monell v. Dep't of Soc. Servs.*, 98 S. Ct. 2018, 2037–38 (1978) does not apply. A "failure to train" claim against a state agency or its employees is therefore simply inapposite in that sense. *See id.* at 2035 n.54 ("Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes."). In addition, a "failure to train" claim cannot be used to circumvent the *respondeat superior* liability bar for supervising officials. *Accord Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 117 S. Ct. 1382, 1391 (1997) ("To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.").

To establish a claim that a defendant acted with deliberate indifference by failing to properly hire, train, or supervise its employees, "[a] showing of simple or even heightened negligence will not suffice." *Doe v. Patton*, 381 F. Supp. 2d 595, 601 (E.D. Ky. 2005) (internal quotation marks and citation omitted), *aff'd sub nom. Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962 (6th Cir. 2006). Instead, "[a] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). Accordingly, a pleading must allege facts setting forth the incident complained of and the supervisory official's role in it with sufficient particularity to survive dismissal. Where a complaint "is devoid of any allegations identifying the allegedly deficient policy, how existing policies and procedures are inadequate or otherwise place inmates' serious medical needs at risk, or [Defendants'] awareness of the deficiency in existing policy and the risk it posed[,]" the complaint fails to state a viable claim for failure to train or supervise. *Dishman v. Correct Care Solutions, LLC*, No. 17-CV-98-HRW, 2018 WL 3097319, at *5 (E.D.

Ky. June 22, 2018) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965–66 (2007)). Here, Phillips fails to make specific factual allegations with respect to any of these matters, and his complaint therefore fails to state a claim for failure to train or supervise in Count V.

**COUNT 2 – ADA & REHABILITATION ACT**

Count 2 of Phillips's Supplemental Complaint asserts that in light of his back condition, A.S. Ankylosing Spondylitis, he qualifies as a "handicapped individual with a disability," and that the defendants have failed to accommodate his condition in violation of the ADA and the Rehabilitation Act. DE 9 at 48. Phillips's brief supporting allegations mostly mimic the statutory language. Nonetheless, the Court finds sufficient factual content to permit this claim to proceed against two Defendants.

Title II of the ADA prohibits any public entity from discriminating based on an individual's disability in the provision of services, programs, or activities:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (emphasis added). The Rehabilitation Act's anti-discrimination provision is to like effect. 29 U.S.C. § 794(a). The Court will direct service on Defendant Falicia Howard to respond to the August 9, 2016, bottom-bunk restriction removal allegation, *see* DE 9 at 14–15, and Defendant Phillip Campbell regarding the KRS placement allegations, *see id.* at ¶¶ 92–93, in their official capacities.

However, only a "public entity" may be sued under the ADA and the RA. The term "public entity" includes "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). "[T]here is no individual liability under Title II of the ADA." *Sagan v. Sumner Cnty. Bd. of Educ.*,

726 F. Supp. 2d 868, 875 (M.D. Tenn. 2010); *see Williams v. McLemore*, 247 F. App'x 1, 5-6 (6th Cir. 2007) (holding that public employees may not be sued in their individual capacity under Title II of the ADA); *Hiler v. Brown*, 177 F. 3d 542, 545-46 (6th Cir. 1999) (holding that there is no personal liability for individuals under the RA). The Court therefore dismisses the individual capacity ADA and RA claims.

## COUNT 1 – IMPROPER HOUSING

Phillips also asserts violations of unidentified rights under the First, Fifth, Eighth, and Fourteenth Amendments. As grounds, Phillips alleges that he was denied "appropriate housing" in light of his limited mobility and his need for a Kosher diet, while also complaining of "retaliatory acts committed against him" and of KDOC employees who were "ill-trained and ill-supervised." DE 9 at 47-48. In short, Phillips's Count 1 constitutes an amalgam of the more specific Counts in his original (Counts I–III and V) and supplemental (Counts 2 and 3) Complaints.

Phillips has long expressed his desire to be housed only at KSR for reasons related to: his medical needs, his religious beliefs, its proximity to his family and his personal physician, and availability of certain rehabilitative programming. DE 9 at 13. However, the Constitution does not protect a prisoner's interest in being housed at a particular prison. *Wilkinson v. Austin*, 125 S. Ct. 2384, 2393 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.") (citing *Meachum v. Fano*, 96 S. Ct. 2532, 2538 (1976)). Count 1 therefore does not state a viable claim to the extent it complains of Phillips's housing assignments alone.

Of course, this does not mean that any prison will do for a particular inmate, but only that an inmate's claim must arise from the denial of a specific constitutional or statutory right. Here, Phillips has already asserted separate claims under the specific constitutional and statutory

provisions, including: under the First Amendment regarding his need for a Kosher diet and alleged retaliation for protected conduct, under the ADA for accommodation of his mobility restrictions, as well as a claim for failure to train and supervise. The Court addresses the specific violations Plaintiff links to his housing separately under the applicable constitutional or statutory provisions. Accordingly, the Court dismisses the broad Count 1 theory as duplicative of and subsumed in the more specific claims Phillips asserts elsewhere.

## COUNT 3 – NEGLIGENCE

In Count 3, Phillips states that "[b]y virtue of the foregoing, all Defendants were negligent and grossly negligent in their treatment of Plaintiff; in addition, the medical professionals responsible for the care of Plaintiff failed to meet the standard of care applicable to their professions in their treatment of Plaintiff." Phillips provides nothing further to clarify the factual basis for this claim or to identify against whom he asserts it. DE 9 at 48.

Insofar as this single-sentence claim purports to assert that every one of the 40+ named Defendants was negligent based upon some unspecified event mentioned somewhere within the 90+-page expanse of the Plaintiff's pleadings, it fails to comply with Rule 8 of the Federal Rules of Civil Procedure. The Supreme Court has made clear that to satisfy Rule 8(a)(2), the plaintiff's complaint must contain sufficient information to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1965–66 (citing *Conley v. Gibson*, 78 S. Ct. 99, 103 (1957)). In other words, Phillips's Rule 8 obligations were not onerous, but they do require him to say enough that a particular defendant understands what she allegedly did or did not do that led to a particular legal claim. Faced with an analogous complaint, one court explained:

> For several pages, Plaintiff lists names of defendants, and then follows the list with
> a paragraph of allegations alleging that "defendants" committed certain

constitutional violations, but fails to tie together a certain defendant with a particular action. A complaint that fails to state the specific acts of the defendant which violated the plaintiff's rights fails to meet the notice requirements of Federal Rule of Civil Procedure 8(a). *See Hutchinson v. United States*, 677 F.2d 1322, 1328 n. 5 (9th Cir. 1982). *See also Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir. 1981) ("[T]his court has consistently demanded that a civil rights complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiff.").

If the Court were to order service of this complaint on defendants, the defendants could not possibly be expected to frame an answer, as there are 32 defendants and years worth of allegations[.] As another federal court put it,

> [n]either the Court nor Defendants are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear and succinct statement of each claim for relief. It is Plaintiffs' responsibility to edit and organize their claims and supporting allegations into a manageable format.

*Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. Apr. 25, 2008)

(citing *Windsor v. Colorado Dep't of Corr.*, 9 F. App'x 967, 968 (10th Cir. 2001)).

The Court will therefore dismiss this claim without prejudice against all Defendants, with one exception. Phillips claims "the medical professionals responsible for the care of Plaintiff failed to meet the standard of care applicable to their professions in their treatment of Plaintiff." DE 9 at 48. Phillips appears to reference his claim that, in April 2017, Dr. Amos refused to provide medical care after he fell down some steps. DE 9 at 34; DE 9-5 at 1-2. The Court will therefore direct service upon Dr. Amos to respond to Count 3.

## COUNT 4 – TORT OF OUTRAGE

Count 4 asserts a Kentucky law "outrage" claim. Phillips contends that the mental and emotional distress he suffered cannot be compensated by any other cause of action in the Complaints. DE 9 at 48. However, Kentucky generally treats IIED[24] as a "gap-filler" claim, which

---

[24] Kentucky IIED has four elements: '[1] the wrongdoer's conduct must be intentional or reckless; [2] the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; [3] there must be a causal connection between the wrongdoer's

is not available if "an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed." *Rigazzio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298–99 (Ky. Ct. App. 1993). As the allegations here suggest, constitutional and traditional state law torts are available to address Phillips's emotional distress damages.

Nonetheless, "[t]he tort of outrage is still a permissible cause of action, despite the availability of more traditional torts, as long as the defendants solely intended to cause extreme emotional distress." *Green v. Floyd Co., Ky.*, 803 F. Supp. 2d 652, 655 (E.D. Ky. 2011).[25] Here, the Court cannot construe the Complaint as including an IIED claim of this type. *Cf. Lovins v. Hurt*, No. CIV.A. 11-216-JBC, 2011 WL 5592771, at *3 (E.D. Ky. Nov. 16, 2011) ("When the claim of emotional distress is a supplement to another tort claim, such as false imprisonment, the burden of showing sole intent cannot be met.").

Phillips pleads various discriminatory and retaliatory purposes for Defendants' alleged conduct, but he does not claim any Defendant acted for the sole purpose of causing him emotional distress. *Cf. Banks v. Fritsch*, 39 S.W.3d 474, 481 (Ky. Ct. App. 2001). The Court, even granting Plaintiff the favorable reading required at this stage, can only read the emotional distress claim "as an element of damages" arising out of the other torts. *Childers*, 367 S.W.3d at 582. When an

_____

conduct and the emotional distress[;] and [4] the distress suffered must be severe." *Osborne v. Payne*, 31 S.W.3d 911, 913–14 (Ky. 2000). The tort is only "intended to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees." *Id.* at 914.

[25] IIED can also be pleaded alternatively. However, "a litigant cannot prevail on both a negligence claim and an intentional infliction of emotional distress claim on the same set of facts." *Childers v. Geile*, 367 S.W.3d 576, 581 (Ky. 2012); *see also id.* at 582–83 ("Thus the notion that intentional infliction of emotional distress is a gap-filler tort is correct. It is also correct that it is a stand-alone tort under the right facts. This is not to say that it cannot be pleaded alternatively, but there can be only one recovery on a given set of facts. . . . There can be only one recovery for emotional distress on the same acts.").

outrage claim is based on "the *same* emotional distress" resulting from other alleged torts, Kentucky law prohibits recovery for the stand-alone emotional distress tort. *Id.* (emphasis in original). Accordingly, the IIED claim fails as a matter of law.

## IV

The Court, having conducted an initial review of Phillips's complaint, finds certain defendants must be served with process consistent with the Court's opinion in this matter. As Phillips has previously been granted pauper status in this case, DE 8, the Court will arrange for service of process on his behalf. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3). In the interests of facilitating service, the Court first asks the individual defendants, through the Kentucky Department of Corrections, if they will voluntarily waive formal service of process as set forth below.

Accordingly, the Court hereby **ORDERS** as follows:

1.  The Court **DISMISSES** all of Phillips's claims under 42 U.S.C. § 1983 against KDOC and each of the defendants in their official capacities;

2.  With respect to Count I (DE 1 at ¶¶ 96–105):

    a.  The Court **DIRECTS** the Clerk to **SERVE** Defendants Brad Adams, Aaron Smith, Anna Valentine, Phillip Campbell, Mike Williams, Brittany Sturgill, Paul Holbrook, Lorie Conley, Malcolm Smith, Amanda Scott, Jennifer Tracey, DeEdra Hart, William Kizziar, James Sweat, Beth Harper, David Riggs, and Rodney Ballard in their official capacities and the KDOC to respond to Phillips's RLUIPA claims for injunctive and declaratory relief.

    b.  The Court **DIRECTS** the Clerk to **SERVE** Defendants Paul Holbrook, Amanda Scott, Jennifer Tracey, DeEdra Hart, William Kizziar, Phillip

Campbell, and Matt Jergen in their individual capacities to respond to Phillips's First Amendment Free Exercise claims;

3. With respect to Counts II (DE 1 at ¶¶ 106–107) and 6 (DE 9 at ¶¶ 145–146), the Court **DIRECTS** the Clerk to **SERVE** Defendants Darrell Wheeler, Mark Jackson, and Steven Crawford in their individual capacities to respond to Phillips's retaliation claims;

4. With respect to respect to Count III (DE 1 at ¶¶ 108–111) the Court **DIRECTS** the Clerk to **SERVE** Defendant Steven Crawford in his individual capacity to respond to Phillips's Eighth Amendment claims;

5. With respect to Counts IV (DE 1 at ¶¶ 112–13) and 5 (DE 9 at ¶¶ 143–44), the Court **DISMISSES** the access-to-courts claims regarding handling of inmate legal mail **WITHOUT PREJUDICE**;

6. With respect to Count 2 (DE 9 at ¶¶ 136–38), the Court **DIRECTS** the Clerk to **SERVE** Defendants Phillip Campbell and Falicia Howard in their official capacities to respond to Phillips's ADA & RA claims;

7. With respect to respect to Count 3 (DE 1 at ¶¶ 139–140) the Court **DIRECTS** the Clerk to **SERVE** Defendant Dr. Elton Amos in his individual capacity to respond to Phillips's negligence claims;

8. Except as noted in paragraphs 2-7 herein, the Court **DISMISSES** Phillips's claims (DE 1 & DE 9) against all Defendants **WITH PREJUDICE**;

9. The Clerk **SHALL** forward by certified mail, return receipt requested, twenty-five (25) copies of: (A) the Complaints (DE 1 & DE 9); 25 form "Rule 4 Notice of a Lawsuit and Request to Waive Service of Summons"; and a copy of this Order to:

Office of Legal Services
Kentucky Department of Corrections
275 East Main Street
P. O. Box 2400
Frankfort, Kentucky
40602-2400

10.    Counsel for the KDOC **SHALL** file a notice in the record **within twenty-eight (28) days** indicating whether any of the Defendants tapped for service below will waive formal service of process pursuant to Rule 4(d).

11.    If KDOC, through counsel, files a waiver on any Defendant's behalf within twenty-eight (28) days, such Defendant shall have sixty (60) days after the notice of waiver of service is filed with the Court to answer or respond to the complaint.

12.    For any Defendant that elects not to file a waiver within this period, the Court **DIRECTS** the United States Marshal Service to personally serve such Defendants pursuant to Federal Rule of Civil Procedure 4; such Defendants **SHALL** answer no later than **twenty (20) days** after service.

This 4th day of June, 2019.

Signed By:

_Robert E. Wier_

**United States District Judge**